Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 3 0 2023

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN I. SANGER, <br><br> Defendant. | Case No.: 2:22-CR-52-TOR-1 <br><br> Fed. R. Crim. P. 11(c)(1)(C) Plea Agreement |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant John I. Sanger ("Defendant"), both individually and by and through Defendant's counsels, Amy Rubin and J. Steven Roberts, agree to the following Plea Agreement.

1.  Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 2 of the Superseding Indictment filed on June 7, 2022, which charges Defendant with Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), a Class C felony.

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not more than 10 years;

PLEA AGREEMENT - 1

   b.  a term of supervised release not to exceed 3 years;

   c.  a fine of up to $250,000; and

   d.  a $100 special penalty assessment.

 2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

   a.  5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

   b.  3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

   c.  2 years in prison if the offense that resulted in the term of Supervised Release is a class C or D felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

 3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

   a.  sentencing is a matter solely within the discretion of the Court;

   b.  the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

  c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

  d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

  e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

  f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

  a. pleading guilty in this case may have immigration consequences;

  b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

  c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

  d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

PLEA AGREEMENT - 3

5. <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;
    b.    the right to see, hear and question the witnesses;
    c.    the right to remain silent at trial;
    d.    the right to testify at trial; and
    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2), the United States would have to prove the following beyond a reasonable doubt.

    a.    *First*, on or about March 12, 2022, within the Eastern District of Washington, Defendant knowingly possessed stolen ammunition;

    b.    *Second*, the ammunition had been shipped or transported in interstate or foreign commerce; and

PLEA AGREEMENT - 4

   c. *Third*, at the time of the possession, Defendant knew or had reasonable cause to believe that the ammunition had been stolen.

 7. <u>Factual Basis and Statement of Facts</u>

 The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

 The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

 In August 2021, the Federal Bureau of Investigation (FBI) and United States Air Force Office of Special Investigations (AFOSI) initiated an investigation into defendant, Airman John I. Sanger. The investigation involved the use of an undercover agent (UC). This investigation was predicated on two accounts associated with Defendant, "awakenedcascadian" and "problematicpatriot," wherein Defendant discussed committing acts of violence in furtherance of a political agenda. Specifically, on December 2, 2020, Defendant, utilizing "problematicpatriot" account, was asked by another used what "taking our government back" looked like. Defendant responded: "I think the capital needs to be seized…No trial or charge to escape." Subsequently, on December 6, 2020, Sanger again utilizing the "problematicpatriot" account posted a call for the violent seizure of the U.S. Capitol building, stating the following: "they defrauded our election system and are still getting away with it. That means this system has run it's course. People have to die."

 Throughout the course of this investigation, the UC and Defendant would routinely meet and discuss issues involving minorities, opposition to vaccines, and

PLEA AGREEMENT - 5

the targeting of critical infrastructure. Specifically, the UC and Defendant discussed targeting of the Spokane County Public Health building and COVID-19 testing sites through the use of a Molotov cocktail.

During the investigation into Defendant, the FBI and AFOSI learned Defendant was able to secure stolen military ammunition from a member, later identified as Nathan Richards, of the Fairchild 92nd Security Forces Squadron Combat Arms Training Management (CATM) section. The CATM is responsible for ensuring members of the Air Force are trained and combat ready to safely use and maintain all types of small arms. Richards invited Defendant, who in turn invited the UC, to go shooting with he and other members of CATM at Fishtrap Lake, in the Eastern District of Washington.

On March 12, 2022, the UC, Eric Eagleton, Richards, the Defendant, and others, arrived at Fishtrap Lake and engaged in target shooting using stolen ammunition, specifically green tip 5.56 M855 ammunition, from the U.S. Air Force's CATM section. At the conclusion of the event, Richards gave Defendant additional stolen ammunition for his personal use. Defendant subsequently provided the UC a small portion of the stolen ammunition.

On March 28, 2022, Defendant sent a text message to the UC stating the Eagleton contacted him (Sanger) because the Eagleton had additional ammunition to give him. A portion of the text message conversation follows:

Defendant: *"Eagle can hook us up with some rounds. Dude's awesome."*
UC: *'Really? How much does he want for them?"*
Defendant: *"Nothing. It's stolen."*
UC: *"Seriously? Bro that's awesome. Think we can get them before Saturday's range day?"*
Defendant: *"Yeah he's solid man. I'm gonna (sic) get the ammo tomorrow."*

The following day, March 29, 2022, AFOSI agents observed the Eagleton and Defendant meet in the Northern Quest Resort and Casino, located at 100 N.

PLEA AGREEMENT - 6

Hayford Rd., Airway Heights, Washington. The agents observed the Eagleton retrieve a military style green ammunition can from his Ford F-150 pickup truck and then meet with Defendant. Eagleton was observed opening the top of the ammunition can and showing Defendant the contents before handing the ammunition can over.

Following the meeting between Eagleton and Defendant, Defendant sent the UC text messages with photographs indicating the receipt of stolen 5.56mm ammunition.

Subsequently, on April 2, 2022, Defendant and the UC shot approximately 250 rounds of the stolen ammunition Defendant received from the Eagleton at Fishtrap Lake. During the shoot, the UC recovered four ammunition clips containing 40 rounds of 5.56mm ammunition from Defendant. Also, during the shoot, the UC photographed the side of the green ammunition container which Defendant brought to the shoot. A review of CATM records indicated this ammunition was expended sometime between March 2, 2021 and July 21, 2021.

On April 26, 2022, as part of the take down of this investigation, the UC conducted a controlled exchange of an unregistered suppressor to Defendant. Defendant had previously expressed his desire to purchase an untraceable suppressor and inquired multiple times if the UC knew anyone who could sell him a suppressor. Prior to April 26, 2022, Defendant provided the UC $250 dollars to purchase a suppressor from the UC's friend "Rocky" who resides in Moses Lake, Washington. To facilitate the reverse buy and the safety of the agents, the UC asked Defendant if Defendant could come to the RV and give the UC a ride to the airport on the morning of April 26, 2022, which Defendant agreed. On the morning of April 26, 2022, Defendant arrived at the UC's RV and went inside. Upon entering, the UC handed Defendant the suppressor. Defendant stated to the UC "what's interesting is just by holding this a person could ruin their life," or words to that effect. Defendant proceeded to exit the RV at which point he was

PLEA AGREEMENT - 7

detained by awaiting FBI and OSI special agents, still in possession of the suppressor.

The suppressor was subsequently seized back as property of the ATF. Specifically, the suppressor was identified as a Knight's Armament, model M4QD, 5.56mm silencer, bearing serial number 981376. The suppressor was not registered in accordance with the National Firearms Act to Defendant at the time of his possession of the suppressor.

Simultaneous to the arrest of Defendant, FBI and AFOSI special agents executed a series of search warrants at Defendant and Eagleton's residences. During the search of Defendant's residence, agents located miscellaneous gun parts, a Mossberg shotgun, a Glock 43 pistol, empty firearm magazines, ammunition, a red gas can, and numerous patches, stickers, and paraphernalia associated with white supremacy and the neo-Nazi movement.

In a post-*Miranda* interview, Defendant admitted to receiving stolen government ammunition, the illegal possession of the suppressor he purchased from the UC, and participation in extremist activities.

The Defendant stipulates the stolen ammunition was ammunition belonging to the United States Air Force and that the ammunition traveled in interstate commerce.

8. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss:

Count 1 – Conspiracy to Commit Theft of Government Property and Possession of Stolen Ammunition, in violation of 18 U.S.C. § 371;

Count 3 – Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2);

Count 4 - Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2); and

PLEA AGREEMENT - 8

Count 10 – Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871;

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9. <u>United States Sentencing Guidelines Calculations</u>

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

    a. <u>Base Offense Level</u>

The United States and the Defendant agree that the base offense level for Possession of Stolen Ammunition, in violation of 18 U.S.C. §§ 922(j), 924(a)(2) is 18 because Defendant's offense involved the possession of a firearm as described in 26 U.S.C. § 5845(a). U.S.S.G. § 2K2.1(a)(5).

    b. <u>Specific Offense Characteristics</u>

The United States and the Defendant make no agreement on the application of specific offense characteristics. The parties are free to argue for or against the application of any specific offense characteristics.

    c. <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

        i. accepts this Plea Agreement;

        ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

PLEA AGREEMENT - 9

        iii.       demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

        iv.       provides complete and accurate information during the sentencing process; and

        v.       does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    d.    <u>Separate Prosecution by United States Air Force pursuant to violations of Title 10, United States Code</u>

The Defendant acknowledges he will also be prosecuted at a General Court-Martial for violations of 10 U.S.C. § 892, violation of a lawful order or regulation. This plea agreement does not bind the United States Air Force or the General Court-Martial.

    e.    <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

    f.    <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be

PLEA AGREEMENT - 10

determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10. Incarceration

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), Defendant and the United States jointly recommend that Defendant be sentenced to a term of imprisonment of between eighteen (18) and twenty-four (24) months.

If the Court rejects the Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(5), Defendant and the United States agree that they each may withdraw from the Plea Agreement. If Defendant withdraws from the Plea Agreement, Defendant may withdraw his pleas of guilty. If the United States withdraws from the Plea Agreement, the United States may prosecute Defendant for any and all criminal conduct involving or related to the underlying facts and circumstances of this case.

11. Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

PLEA AGREEMENT - 11

12.  Abandonment

Defendant, John I. Sanger, agrees to abandon the following listed assets to the Federal Bureau of Investigation (FBI):

- a Knight's Armament, model M4QD, 5.56mm silencer, bearing serial number 981376

The Defendant agrees to take all steps as requested by the United States and FBI to effectuate the abandonment of the assets to FBI and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment. Defendant consents to the disposal, including destruction, of the assets.

The Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that FBI might take, in its sole discretion, to carry out the abandonment, disposition, and destruction of the assets. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of assets, including any such claim for attorney fees and litigation costs.

13.  Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.  Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

PLEA AGREEMENT - 12

14. <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant agrees to waive the right to appeal the conviction and sentence in this matter if the Court imposes a prison term consistent with the terms of this Fed. R. Crim. P. 11(c)(1)(C) plea agreement.

If the Court sentences Defendant outside the Rule 11(c)(1)(C) and Defendant chooses *not* to withdraw, then the following applies: Defendant agrees to waive his right to appeal his conviction and sentence if the Court imposes a prison term no higher than the high-end of the applicable guideline range as determined by the Court. If the Court imposes a sentence higher than the high-end of the applicable guideline range, Defendant may appeal only the substantive reasonableness of his sentence.

Defendant expressly waives Defendant's right to appeal any fine or term of supervised release imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from

PLEA AGREEMENT - 13

information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. this Plea Agreement shall become null and void;

    b. the United States may prosecute Defendant on all available charges;

    c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and defenses Defendant might have to the United States' decision about how to proceed, including a claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 14

18. Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____        8-30-2023
Patrick J. Cashman                     Date
Assistant United States Attorney

PLEA AGREEMENT - 15

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    8/30/23
John I. Sanger                            Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____    8/30/23
Amy Rubin                                Date
Attorney for Defendant

PLEA AGREEMENT - 16